IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| DESHANE NICOLE DANIELS-CARERRO, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INOVA HEALTH CARE SERVICES, | ) |
| | ) |
| Serve: | ) |
|     CT Service Corporation | ) |
|     Registered Agent | ) |
|     4701 Cox Rd Ste 285, | ) |
|     Glen Allen, VA, 23060 - 6808, | ) |
| | )    **JURY TRIAL DEMAND** |
|     Defendant. | ) |

**COMPLAINT**

COMES NOW, Plaintiff Deshane Nicole Daniels-Carerro (hereinafter, "Ms. Daniels-Carerro-Carerro" or "Plaintiff"), by counsel, and states as her Complaint against Defendant INOVA Health Care Services (hereinafter, "INOVA" or "Defendant"), the following:

**I. JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter as it arises from the federal questions presented by the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

2.      Venue is appropriate as the acts and/or omissions of Defendants from which the causes of action arise occurred within the Eastern District of Virginia. *See* 28 U.S.C. § 1391(b)(2).

1

3. Due to their contacts within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Rights from the EEOC dated July 10, 2025 **(Exhibit A)**. Plaintiff files suit within ninety (90) days of receipt of that Notice of Rights.

## II. THE PARTIES

5. Ms. Daniels-Carerro is a citizen of the United States and the Commonwealth of Virginia and, at all times relevant, was employed by INOVA.

6. INOVA is a non-stock corporation headquartered in Falls Church Virginia.

7. INOVA is a non-profit health organization that owns and manages hospitals and long-term care facilities throughout the Commonwealth. INOVA employs thousands of employees.

8. INOVA employed Ms. Daniels-Carerro fulltime as an Operating Room Nurse in the float pool. Ms. Daniels-Carerro floated among six of the INOVA medical facilities.

9. INOVA hired Ms. Daniels-Carerro on or around January 24, 2023. Ms. Daniels-Carerro had worked previously as a travel nurse at the INOVA facilities prior to her full-time hire by INOVA.

## III. FACTUAL ALLEGATIONS

10. Ms. Daniels-Carerro is disabled as that term is used by the Americans with Disabilities Act. Her disability, multiple sclerosis, manifests in multiple ways and symptoms that affect daily life activities such as walking, sitting, and standing. Ms.

Daniels-Carerro' condition is painful at times and generates debilitating fatigue on occasion.

11.     Despite these ailments, at all times, Ms. Daniels-Carerro was able to meet the essential functions of her job.

12.     After working for INOVA for approximately three years, Ms. Daniels-Carerro only worked longer than an eight-hour shift a handful of rare occasions. The significant majority of her shifts at INOVA had been eight hours or less.

13.     Ms. Daniels-Carerro was diagnosed with multiple sclerosis in August of 2023.

14.     In August of 2023, Ms. Daniels-Carerro submitted an accommodation request through the appropriate channels. Ms. Daniels-Carerro followed established practice and policies when requesting accommodations at INOVA.

15.     Ms. Daniels-Carerro informed INOVA of her disability in 2023 and at all times pertinent, INOVA regarded Ms. Daniels-Carerro as disabled.

16.     Ms. Daniels-Carerro' health care provider directed Ms. Daniels-Carerro to work no more than eight hours per shift.

17.     Ms. Daniels-Carerro requested the reasonable accommodation of limiting herself to eight-hour shifts.

18.     INOVA denied this request despite the fact that it was reasonable and not an undue hardship on INOVA. Indeed, many nurses worked eight-hour shifts, as Ms. Daniels-Carerro herself had worked during her career at INOVA.

19.     INOVA personnel informed Ms. Daniels-Carerro in an ADA accommodations meeting that her job "wouldn't be the best thing for her," implying it was due to her disability.

3

20.    INOVA retaliated against Ms. Daniels-Carerro by consistently scheduling her to work twelve-hour shifts in an effort to make her quit.

21.    The twelve-hour shifts were grueling at times for Ms. Daniels-Carerro due to her disability. She suffered great pain and fatigue requiring medical treatment. Ms. Daniels-Carerro continued to work at INOVA despite the environment, because she needed employment.

22.    Ms. Daniels-Carerro repeatedly requested this accommodation be granted during the course of her employment with INOVA. Ms. Daniels-Carerro contended that she had worked twelve-hour shifts on less than five occurrences in three years of service but INOVA denied the request.

23.    Ms. Daniels-Carerro issued a written good-faith report of INOVA's failure to accommodate and the retaliatory shifts she was required to work, to INOVA on or around May 24, 2024. INOVA did not meaningfully respond to Ms. Daniels-Carerro' written report.

24.    Ms. Daniels-Carerro informed INOVA that other operating room nurses worked eight-hour shifts, but INOVA denied the request.   These communications occurred in the summer and September of 2024.

25.    Throughout 2024, as Ms. Daniels-Carerro repeatedly requested an accommodation, INOVA personnel requested multiple medical documents. INOVA consistently maintained they needed more information despite the fact that they had all required information.

26.    INOVA intentionally directed Ms. Daniels-Carerro to seek additional medical documentation that was unnecessary for the determination of the

4

accommodation. The only purpose for the requests was to delay and reject accommodations at INOVA.

27.     INOVA purposefully sought to frustrate the accommodations process.

28.     On or about September 17, 2024, INOVA suspended Ms. Daniels-Carerro from employment.

29.     The Director of the Operating Room stated to Ms. Daniels-Carerro, "I have built a specific culture here and I don't think you fit in".

30.     On or about September 27, 2024, INOVA personnel contacted Ms. Daniel and informed her that no INOVA hospital could accommodate her eight-hour shift request.

31.     Ms. Daniels-Carerro knew this to be false because INOVA's Leesburg facility as well as INOVA's Falls Church facility posted listings in September of 2024 for operating room nurse positions working eight-hour shifts.

32.     Ms. Daniels-Carerro questioned why she was denied an accommodation when INOVA was hiring operating room nurses to work at the same shift she had requested.

33.     INOVA responded by providing false discipline to Ms. Daniels-Carerro indicating that Ms. Daniels-Carerro was "unapproachable". The discipline was titled "FINAL WRITTEN WARNING."

34.     Prior to informing INOVA of her disability, Ms. Daniels-Carerro was well-regarded at INOVA and received positive work performance feedback.

35.     After revealing her disability and participating in the accommodations process, Ms. Daniels-Carerro was subjected to false performance feedback and false discipline.

36. INOVA intended to terminate Ms. Daniels-Carerro.

37. Ms. Daniels-Carerro resigned prior to being terminated by INOVA.

38. Ms. Daniels-Carerro resigned from INOVA on or about January 31, 2025.

39. Ms. Daniels-Carerro resigned because the environment was intolerable, unaccommodating, and Ms. Daniels-Carerro would have been terminated but for her resignation.

40. Ms. Daniels-Carerro, at all times, met INOVA's legitimate expectations and could perform the essential functions of her position with a reasonable accommodation.

41. Because the actions of INOVA's supervisory employees were taken within the scope of their employment, INOVA is responsible for their actions based upon the doctrine of *respondeat superior*.

42. Ms. Daniels-Carerro found herself working in an environment charged with animus against her. INOVA refused to accommodate Ms. Daniels-Carerro.

**COUNT I: CLAIM FOR DISCRIMINATION IN VIOLATION OF THE ADA**

43. Ms. Daniels-Carerro incorporates herein by reference the preceding paragraphs of this Complaint.

44. At all times relevant to this Complaint, Ms. Daniels-Carerro was a qualified individual with a disability pursuant to the ADA.

45. Specifically, and at all times relevant, Ms. Daniels-Carerro suffered from a recognized disability pursuant to the ADA.

46. In the alternative, Ms. Daniels-Carerro was regarded by INOVA as having such a disability.

47. At all times relevant, however, Ms. Daniels-Carerro could perform the essential functions of her job with an accommodation.

48.    At all times relevant, Ms. Daniels-Carerro was performing her work at a satisfactory level and meeting or exceeding the legitimate business expectations of INOVA.

49.    INOVA would not have disciplined Ms. Daniels-Carerro, constructively discharged Ms. Daniels-Carerro' employment, nor taken the other discriminatory actions against her, but for Ms. Daniels-Carerro' disability or perceived disability.

50.    Any reasons given by INOVA for its treatment of Ms. Daniels-Carerro were pretextual, as Ms. Daniels-Carerro met INOVA's legitimate expectations.

51.    Ms. Daniels-Carerro' adverse employment actions occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon her disability.

52.    As a direct and proximate result of INOVA's actions, Ms. Daniels-Carerro has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

53.    At all times material hereto, INOVA engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Daniels-Carerro so as to support an award of punitive damages.

54.    The above-described acts by INOVA and employees of INOVA constitute disability discrimination in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq.*, and the ADA Amendments Act of 2008.

### COUNT II: FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE ADA

55.    Ms. Daniels-Carerro incorporates herein by reference, the preceding paragraphs of this Complaint.

56.     At all times relevant to this Complaint, Ms. Daniels-Carerro was a qualified individual with a disability, pursuant to the ADA.

57.     At all times relevant, however, Ms. Daniels-Carerro could perform the essential functions of her job with an accommodation.

58.     Ms. Daniels-Carerro revealed her disability to her supervisors at INOVA and requested reasonable accommodations.

59.     INOVA failed to accommodate Ms. Daniels-Carerro by refusing to appropriately engage in a good-faith dialogue with her regarding accommodations, intimidating and discouraging Ms. Daniels-Carerro from pursuing her accommodation requests, and denying Ms. Daniels-Carerro's accommodation requests.

60.     As a direct and proximate result of INOVA's actions, Ms. Daniels-Carerro has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

61.     At all times material hereto, INOVA engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Daniels-Carerro so as to support an award of punitive damages.

62.     The above-described acts by INOVA and employees of INOVA constitute a failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq.*, and the ADA Amendments Act of 2008.

WHEREFORE, Plaintiff Deshane Nicole Daniels-Carerro, prays for judgment against Defendant INOVA Health Care Services, and for injunctive relief, equitable relief, compensatory damages, back and front wages and benefits, punitive damages, liquidated damages, together with prejudgment interest from the date of Ms. Daniels-Carerro'

8

constructive discharge, post judgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED ON ALL ISSUES INCLUDING WHETHER AN ENFORCEABLE ARBITRATION AGREEMENT EXISTS BINDING THE PARTIES TO ARBITRATION.

Respectfully Submitted,

**DESHANE NICOLE DANIELS-CARERRO**

By: /s/ _____
Thomas E. Strelka, Esq. (VSB # 75488)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA  24018
Tel:  540-283-0802
thomas@vaemployment.law