**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| DESHANE NICOLE DANIELS-CARRERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-1701 |
| | ) | |
| INOVA HEALTH CARE SERVICES | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Laurie L. Kirkland, VSB No. 75320
Ian J. McElhaney, VSB No. 94888
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
Phone: 703-691-1235
Fax: 703-691-3913
lkirkland@bklawva.com
imcelhaney@bklawva.com
*Counsel for Defendant Inova Health Care
Services d/b/a Inova Health System*

## Table of Contents

Preliminary Statement.................................................................................................... 1

Statement of Undisputed Material Facts........................................................................ 2

    Inova Hires Ms. Daniels-Carrero for Its Internal Float Pool of Nurses........................... 2

    Ms. Daniels-Carrero's Schedule Requests, Beginning Prior to Any Diagnosis of
        Disability............................................................................................................... 3

    Ms. Daniels-Carrero's Diagnosis of Multiple Sclerosis .................................................. 4

    Ms. Daniels-Carrero's Initial Requests for Reasonable Accommodations ...................... 5

    Inova Attempts to Meet with Ms. Daniels-Carrero Three Times Without Success ........... 6

    Ms. Daniels-Carrero Receives Requested Accommodations at Her Next Assignment...... 7

    Ms. Daniels-Carrero's Renewed Requests for Accommodations..................................... 8

    Ms. Daniels-Carrero's Performance and Behavior Issues ............................................... 9

    Inova Continues to Accommodate Ms. Daniels-Carrero until Her Resignation .............. 12

Argument ....................................................................................................................... 14

    I.   Inova Granted Reasonable Accommodations to Ms. Daniels-Carrero (Count II)............ 15

        A.  An Essential Function of Ms. Daniels-Carrero's Position as an ISS Nurse Was to
            Flexibly Meet and Adapt to the Needs of Each Unit to Which She Was Assigned ... 15

        B.  Notwithstanding Her Inability to Perform All Essential Functions of Her Job,
            Inova Nevertheless Granted Ms. Daniels-Carrero's Requested Accommodation...... 18

    II.  Inova Did Not Discriminate against Ms. Daniels-Carrero by Issuing Discipline, Nor
        Did It Constructively Terminate Her Employment (Count I)......................................... 19

        A.  Inova Did Not Discriminate against Ms. Daniels-Carrero by Issuing Discipline to
            Her During Her Employment..................................................................................... 20

            1.  Ms. Daniels-Carrero Cannot Prove a Prima Facie Case of Discrimination.... 20

            2.  Inova Had Legitimate, Non-Discriminatory Reasons for Issuing Discipline
               to Ms. Daniels-Carrero and Placing Her on Unpaid Administrative Leave ... 23

            3.  Ms. Daniels-Carrero Cannot Satisfy Her Burden of Proving that Inova's
               Stated Reasons Were a Pretext for Discrimination Based on a Disability ..... 25

        B.  Inova Did Not Constructively Discharge Ms. Daniels-Carrero................................. 27

Conclusion ..................................................................................................................... 30

**Preliminary Statement**

Defendant Inova Health Care Services ("Inova") formerly employed Plaintiff Deshane Nicole Daniels-Carerro[1] ("Ms. Daniels-Carerro") as a perioperative nurse in its Inova Staffing Solutions department. This department within Inova provides extra nurses to Inova's five hospitals and its other sites of care when those units experiencing a nursing shortage. Inova compensates nurses in this department at a higher rate for their flexibility in meeting the needs of so many different hospital units.

While employed in this role, Ms. Daniels-Carrero received a diagnosis of multiple sclerosis, which ultimately impacted her ability to work longer shifts at the hospital. Specifically, Ms. Daniels-Carrero requested to work only 8-hour shifts, rather than the 10-hour or 12-hour shifts utilized on certain units. While Ms. Daniels-Carrero has filed this action claiming that Inova denied her this accommodation in violation of the Americans with Disabilities Act ("ADA"), the undisputed record reflects that Inova *granted* the requested accommodation and that, after her request, Ms. Daniels-Carrero never worked anything but an 8-hour shift at Inova.

Furthermore, while Ms. Daniels-Carrero also claims that Inova discriminated against her on the basis of her disability, or a perceived disability, by disciplining her and constructively discharging her employment, the undisputed record instead reflects that Inova had non-discriminatory reasons for the written discipline that it issued to her and, in any event, Ms. Daniels-Carrero voluntarily left her employment with Inova only after seeking and securing another job and while otherwise desiring to continue her employment on the last unit to which Inova had assigned her to work. For these reasons, which are set forth fully below, Inova is entitled to summary judgment in its favor as to both counts in the Complaint.

---

[1] During her employment with Inova, Ms. Daniels-Carrero's last name was Daniels. She also used the nickname "Dee Dee." Accordingly, references to Ms. Daniels or to Dee Dee in the record in this case refer to the Plaintiff, now known as Ms. Daniels-Carrero.

**<u>Statement of Undisputed Material Facts</u>**

***Inova Hires Ms. Daniels-Carrero for Its Internal Float Pool of Nurses***

1.      Inova operates five hospitals and over 250 care sites in the Northern Virginia area. Inova's five hospitals include Inova Alexandria Hospital, Inova Fair Oaks Hospital, Inova Fairfax Hospital, Inova Loudoun Hospital, and Inova Mount Vernon Hospital. One of its hospitals, Inova Fairfax Hospital, contains three separate surgery centers, or "ORs": Inova Fairfax Hospital Tower OR, Inova Fairfax Hospital Women's OR, and Inova Fairfax Hospital Professional Services Building ("PSB") Surgery Center. (Declaration of Karen Farrah, attached as Ex. 1, at ¶ 3-4; *see also* Deposition of Deshane Daniels-Carrero, attached as Ex. 2, at 107.)

2.      By letter dated December 30, 2022, Inova offered Ms. Daniels-Carrero a job as a Perioperative Registered Nurse with the Inova Staffing Solutions ("ISS") department, with an anticipated start date of January 23, 2023. (Deposition of D. Daniels-Carrero, attached as Ex. 2, at 14, 16; *see also* Offer of Employment, attached as Ex. 3.) As reflected in the offer letter, Ms. Daniels-Carrero's initial supervisor was Dana Lowry, then the Nurse Manager of ISS. (Ex. 3; *see also* Deposition of Dana Lowry, attached as at Ex. 29 at 6, 9.)

3.      ISS operates as an internal float pool, meaning that ISS nurses are assigned to each of Inova's five hospitals for 13-week assignments, which assignments also can be extended, mostly based on which units have a need for an extra nurse. (Ex. 1 at ¶ 5; Ex. 2 at 14-15.)

4.      Prior to her start date, Inova provided Ms. Daniels-Carrero with a welcome email relating to her position. (Ex. 29 at 38-39; Ex. 1 at ¶ 6.) One of its attachments, labeled "Welcome to ISS Peri Op info-Final 1.17.2023," outlined the following requirements for assignments:

> **<u>Assignments</u>** – Determined by the needs of care and units. There are always more requests than ISS nurses. ISS management prioritizes assignments of ISS nurses to units with the greatest needs based on data (vacancies, vacancy rate, traveler usage, etc.). ISS nurses do not have a say in where they are assigned. ***All ISS Team Members must be able to go to all facilities without exception – this is key to continued ISS department employment. If an ISS nurse is unable or***

> *unwilling to be contracted to a specific facility for any reason: clinical issues, performance concerns, or behavior; a search for a position outside of ISS will be in order*. As a system, we are charged with reducing or eliminating the use of travel nurses. ISS must use data to prioritize staffing needs across the system.

(*Id.*; January 18, 2023 Email and the referenced attachment, attached as Ex. 4 (emphasis added).)

5.      Similarly, the first duty and responsibility listed in Ms. Daniels-Carrero's job description as a perioperative nurse in ISS is that she "float[] to any Perioperative site of care within Inova Health System." (Ex. 1 at ¶ 6; *see also* Job Description, attached as Ex. 5.)

6.      Because a requirement of the position as an ISS float pool nurse is to go to any of Inova's hospitals and to all of its sites of care, Inova pays ISS nurses a higher hourly rate than it pays its unit-based nurses, who report to the same unit each day. ISS float pool nurses are paid at least $10 more an hour for their flexibility. (Ex. 2 at 15-16, 191; Ex. 1 at ¶ 7; Ex. 29 at 39-40.)

7.      The Nurse Manager for ISS when Ms. Daniels-Carrero began her employment with ISS considered the requirement to work at all facilities to be an essential function of the job as an ISS nurse. (Ex. 29 at 40-41.)

### Ms. Daniels-Carrero's Schedule Requests, Beginning Prior to Any Diagnosis of Disability

8.      Upon commencing her employment with Inova, ISS assigned Ms. Daniels-Carrero first to Inova Fair Oaks Hospital OR. During this initial assignment, Ms. Daniels-Carrero worked four 10-hour shifts each week. (Ex. 2 at 17-18.)

9.      During her first assignment, Ms. Daniels-Carrero received counseling after a potential patient safety event that she did not feel was her fault. (Ex. 2 at 18-20.)

10.      ISS next assigned Ms. Daniels-Carrero to Inova Fairfax Hospital Tower OR from from April 24, 2023 to July 24, 2023. (Ex. 2 at 32.)

11.      Ms. Daniels-Carrero initially requested to work three 12-hour shifts per week during this assignment for her quality of life and because she planned to resume classes to complete a Master of Science in Nursing program. Ultimately, however, Ms. Daniels-Carrero

agreed to work two 12-hour shifts and two 8-hour shifts per week because these were the shifts required by this unit. (Ex. 2 at 33, 35.)

12. In early July 2023, ISS extended Ms. Daniels-Carrero's assignment with Inova Fairfax Hospital Tower OR through August 18, 2023. For that extension period, the unit approved Ms. Daniels-Carrero's request to switch from the required two 12-hour and two 8-hour shifts per week to a schedule of five 8-hour shifts per week, effective July 31, 2023. (Ex. 2 at 36-38, 53-54; *see also* July 11, 2023 Email from Ms. Daniels-Carrero, attached as Ex. 6.)

13. Ms. Daniels-Carrero's request for five 8-hour shifts in early July of 2023 was not based on any known disability at that time or any recommendation of a physician because Ms. Daniels-Carrero had not yet learned that she had any disability, nor had she begun any evaluations or treatment with any physicians for multiple sclerosis. (Ex. 2 at 46-48.)

14. Ms. Daniels-Carrero recalls requesting to work 8-hour shifts because she was getting tired driving home, though she did not know how to explain it at that time. (Ex. 2 at 46.)

15. For Ms. Daniels-Carrero's next assignment, ISS placed her at Inova Fairfax Hospital Women's OR from August 20, 2023 to November 19, 2023, where Ms. Daniels-Carrero continued to work five 8-hour shifts per week during that assignment. (Ex. 2 at 59-60.)

16. ISS then assigned Ms. Daniels-Carrero to the Inova Alexandria Hospital OR from November 20, 2023, to January 27, 2024. At the start of the assignment, Ms. Daniels-Carrero requested to work five 8-hour shifts per week, and the unit met her request. (Ex. 2 at 88-89.)

### *Ms. Daniels-Carrero's Diagnosis of Multiple Sclerosis*

17. In or around July 22, 2023, Ms. Daniels-Carrero was hospitalized for symptoms that ultimately led to her diagnosis of multiple sclerosis in the following weeks. (Ex. 2 at 45-46.)

18. On August 4, 2023, Ms. Daniels-Carrero met Dr. Rahul Dave for the first time for an evaluation to determine if she had multiple sclerosis. (Ex. 2 at 50.)

4

19.     During this first appointment, Dr. Dave recommended that she take seven days off to start a medication called Tysabri, but Ms. Daniels-Carrero did not request those days off because she wanted more time to consider taking this medication. (Ex. 2 at 55-56.)

20.     On October 18, 2023, Ms. Daniels-Carrero followed up with Dr. Dave for a second appointment, at which time he confirmed her diagnosis of multiple sclerosis. At the time of this appointment, Ms. Daniels-Carrero was working 8-hour shifts. (Ex. 2 at 70-71, 74, 76.)

### *Ms. Daniels-Carrero's Initial Requests for Reasonable Accommodations*

21.     On December 18, 2023, Ms. Daniels-Carrero met with Dr. Dave again after having started treatment for multiple sclerosis around November. (Ex. 2 at 57, 75-77.)

22.     After this December 18, 2023 appointment with Dr. Dave, Ms. Daniels-Carrero applied for intermittent family medical leave through Inova's third-party administrator, The Hartford. (Ex. 2 at 80-81.) Inova, through The Hartford, approved her requests for intermittent leave, first as Inova medical leave and then intermittent family medical leave. (Ex. 1 at ¶ 8.)

23.     On December 21, 2023, Ms. Daniels-Carrero's ISS supervisor, Dana Lowry, sent an email to Karen Farrah, a Human Resources ("HR") Business Partner, advising her of Ms. Daniels-Carrero's request for intermittent family medical leave for absences (or callouts) and 8-hour shifts. Ms. Lowry added that Ms. Daniels-Carrero would need accommodation paperwork. (Ex. 2 at 81-82; Ex. 1 at ¶ 8-9; *see also* 12/21/23 Email from Ms. Lowry, included in Ex. 7.)

24.     That same day, Ms. Farrah provided Ms. Daniels-Carrero with a copy of Inova's Reasonable Accommodation of Disabilities policy and forms that could be completed both by Ms. Daniels-Carrero and her medical provider. (Ex. 2 at 84; Ex. 1 at ¶ 8-9; Ex. 7.)

25.     On January 7, 2024, Ms. Daniels-Carrero responded to Ms. Farrah's email, attaching the request form that she had completed and a December 21, 2023 letter from Dr. Dave. (Ex. 2 at 85-87; Ex. 1 at ¶ 10; January 7, 2024 Email and attachments, attached as Ex. 8.)

26.     In the form that Ms. Daniels-Carrero completed to request accommodations, she requested 8-hour shifts (day) due to fatigue. (Ex. 2 at 85-87; Ex. 8 at Inova 685.)

27.     At the time of her request for the accommodation of 8-hour shifts, Ms. Daniels-Carrero already was working 8-hour shifts at Inova Alexandria Hospital. (Ex. 2 at 86, 88-89.)

28.     The December 21, 2023 letter from Dr. Dave that Ms. Daniels-Carrero submitted on January 7, 2024, recommended the following accommodations: (1) Up to 5 days off per month for symptoms that impair her ability to work; (2) temperature and humidity controlled environment; excessive heat or cold and excessive humidity can worsen MS symptoms; and (3) time off for scheduled medical appointments and testing. (Ex. 2 at 86-87; Ex. 8 at Inova 686.)

29.     Dr. Dave's letter did not mention 8-hour shifts. (Ex. 2 at 87; Ex. 1 at ¶ 10; Ex. 8.)

30.     On January 10, 2024, Ms. Daniels-Carrero received an email from Ms. Lowry, advising her they would set up a time to meet. (Ex. 2 at 91; 1/10/24 Email, attached as Ex. 9.)

31.     Because part of Ms. Daniels-Carrero's role as an ISS nurse was to go to all five hospitals, and as not all of the ORs in its five hospitals provided 8-hour shifts, Ms. Lowry knew she needed to find out which hospital ORs could accommodate 8-hour shifts as, to Ms. Lowry's knowledge, most of them utilized ISS nurses for 12-hour shifts, with the exception of certain "pockets of the OR and PACU that work eight" hour shifts. (Ex. 29 at 19-21.)

32.     Accordingly, on January 16, 2024, Ms. Lowry sent an email to the leaders of the OR units at Inova's hospitals, inquiring generally as to whether they could accommodate 8-hour shifts. Ms. Lowry did not identify Ms. Daniels-Carrero as the nurse seeking this accommodation. (Ex. 29 at 21, 25, 37; Ex. 1 at ¶ 11; *see also* January 2024 Emails, attached as Ex. 10.)

### *Inova Attempts to Meet with Ms. Daniels-Carrero Three Times Without Success*

33.     On January 16, 2024, Ms. Lowry invited Ms. Daniels-Carrero; Ms. Farrah; and Trisa Fulwood, an administrative coordinator for ISS, to a virtual meeting on January 18, 2024,

6

at 4:00 pm. Ms. Daniels-Carrero accepted the invitation. However, on January 18, 2024, after waiting for 21 minutes, Ms. Daniels-Carrero had not joined the meeting, later expressing confusion as to the manner in which the meeting was to take place. (Ex. 2 at 92-93, 129-130; Ex. 1 at ¶ 12; Ex. 29 at 24; *see also* Emails, attached as Ex. 11 at Inova 739-740 and 680.)

34.     On January 19, 2024, Ms. Fulwood contacted Ms. Daniels-Carrero for dates and times to reschedule the meeting regarding accommodations. Ms. Daniels-Carrero proposed Monday at 4:30pm. (Ex. 2 at 94; Ex. 11 at Inova 738-739.) Ms. Fulwood sent a Microsoft Teams invitation for the proposed time; but, after waiting for 15 minutes, Ms. Daniels-Carrero again had not joined the meeting. (Ex. 2 at 95; Ex. 1 at ¶ 13; *see* Emails, attached as Ex. 12 at Inova 896.)

35.     At the time, Ms. Daniels-Carrero claimed that she had not been notified of the exact date of the meeting or received the meeting link. (Ex. 2 at 98; Ex. 12 at Inova 895-896.)

36.     On January 30, 2024, Ms. Fulwood made a third attempt to schedule a meeting to discuss Ms. Daniels-Carrero's accommodation request. Ms. Daniels proposed "tomorrow or Friday at 4:30pm or Monday at 4:30pm." (Ex. 2 at 100; Ex. 12 at Inova 894.)

37.     Yet, though scheduled for one of those times, Ms. Daniels-Carrero also did not attend the third meeting to discuss her request for accommodations. (Ex. 2 at 101; Ex. 1 at ¶ 14.)

### *Ms. Daniels-Carrero Receives Requested Accommodations at Her Next Assignment*

38.     ISS next assigned Ms. Daniels-Carrero to Inova Fairfax Hospital PSB Surgery Center from January 28, 2024, until April 27, 2024. (Ex. 2 at 106-107.)

39.     Although Ms. Daniels-Carrero had not attended any of the three meetings to discuss her requested accommodations (Ex. 2 at 92-93, 98, 101, 129-130), Ms. Daniels-Carrero worked five 8-hour shifts each week from the outset of this assignment. (Ex. 2 at 108.)

40.     During this assignment, Ms. Daniels-Carrero sent an email to Ms. Farrah and to Bryan Walker, Inova's Director of Public Safety, requesting the accommodation of parking in

7

the "blue garage," which garage is located closer to the PSB Surgery Center than the employee garage (a 4-5 minute walk instead of an 8 minute walk). (Ex. 2 at 109-110; Ex. 1 at ¶ 15; February 20, 2024 Email from Ms. Daniels-Carrero, attached as Ex. 13.)

41.     Inova's Department of Public Safety is authorized to issue garage access to employees for other garages, such as the blue garage, if HR approves the request. (Ex. 1 at ¶ 16.)

42.     Following Ms. Daniels-Carrero's request, security issued her a parking permit, allowing her to park in the blue garage as she requested. (Ex. 2 at 114-115; Ex. 1 at ¶ 16.)

43.     At this time, and later in the fall of 2024, Ms. Daniels-Carrero did not qualify for a handicap placard from the Department of Motor Vehicles. (Ex. 2 at 116-117, 149-150.)

### *Ms. Daniels-Carrero's Renewed Requests for Accommodations*

44.     ISS next assigned Ms. Daniels-Carrero back to Inova Fairfax Hospital Tower OR from April 28, 2024 to August 10, 2024. As had been the case when she was assigned to this unit in the summer of 2023, Ms. Daniels-Carrero was initially scheduled to work two 12-hour shifts and two 8-hour shifts per week as required by that unit. (Ex. 2 at 33, 35, 118-119, 121.)

45.     On April 29, 2024, Ms. Daniels-Carrero sent an email to her ISS managers as well as to the individuals in charge of scheduling nurses for the Inova Fairfax Hospital Tower OR, explaining that she had a doctor's note that she could only work 8-hour shifts and attaching the portion of the ADA paperwork that Ms. Farrah had sent her in December 2023 to be completed by a medical provider, which had been signed and dated by Dr. Dave on January 16, 2024. (Ex. 2 at 119-124; *see also* April 29, 2024 Emails and attachments, attached as Ex. 14.)

46.     Unlike Dr. Dave's December 21, 2023 letter, which Ms. Daniels-Carrero had provided to Ms. Lowry and Ms. Farrah on January 7, 2024, Dr. Dave's January 16, 2024 paperwork recommended that Ms. Daniels-Carrero be allowed to work a maximum of 8 hours per shift. (*Compare* Ex. 8 at Inova 686 *with* Ex. 14 at Inova 1245-1247; *see also* Ex. 1 at ¶ 17.)

8

47. Ms. Daniels-Carrero had not included Dr. Dave's January 16, 2024 paperwork with her request on January 7, 2024, because she did not have it yet. (Ex. 2 at 125.)

48. After receiving this paperwork, Ms. Lowry again requested a meeting. (Ex. 2 at 129; Ex. 1 at ¶ 17; *see also* May 2, 2024 Email, included in Ex. 15 at Inova 1367.)

49. In addition, Ms. Lowry emailed Ashley Smith and Jamie Addo, the clinical directors at Inova Fairfax Hospital Tower OR, where Ms. Daniels-Carrero was assigned, to inquire as to whether their unit could accommodate Ms. Daniels-Carrero's request for an accommodation of only 8-hour shifts. (Ex. 29 at 26; Ex. 1 at ¶ 18; Ex. 15 at Inova 1367.)

50. On May 14, 2024, Ms. Smith confirmed that Inova Fairfax Tower OR could accommodate eight-hour shifts as long as any night rotation was during the week. (Ex. 29 at 26-27; Ex. 1 at ¶ 18; Ex. 18 at 32; Ex. 15.)

51. Ms. Daniels-Carrero was never required to work a 12-hour shift at Inova Fairfax Hospital Tower OR during this assignment or afterwards. (Ex. 2 at 140.)

52. On July 15, 2024, Ms. Daniels-Carrero learned that ISS was assigning her to Inova Loudoun Hospital's OR from August 11, 2024 until November 9, 2024. (Ex. 2 at 141.)

53. On the same day, Ms. Daniels-Carrero also learned that she would be working five 8-hour shifts each week, which she was able to do. (Ex. 2 at 142-143, 148; Ex. 1 at ¶ 19.)

### *Ms. Daniels-Carrero's Performance and Behavior Issues*

54. During Ms. Daniels-Carrero's assignment to Inova Alexandria Hospital OR, the Clinical Director, Robyn Meshach and an RN Unit Supervisor, Chris Chira, met with Ms. Daniels-Carrero on December 20, 2023 to provide coaching. (Ex. 2 at 103, 158-159.)

55. Ms. Meshach thinks she recommended to Ms. Lowry that Ms. Daniels receive discipline due to challenges in her relationships with her peers. (Deposition of Robyn Meshach, attached as Ex. 16, at 38-39.)

56.     In January 2024, Ms. Lowry and Ms. Meshach met with Ms. Daniels-Carrero together and verbally coached Ms. Daniels-Carrero regarding perceptions of her peers of her loud and abrasive tone and shared that peers felt unable to give Ms. Daniels-Carerro feedback. (Ex. 2 at 101-105; Ex. 29 at 34-35; January 2024 Email and Verbal Warning, attached as Ex. 17.)

57.     Eight months later, in September 2024, Shelby Howell contacted Katherine Theissen, who had succeeded Ms. Lowry as Ms. Daniels-Carrero's supervisor, with concerns about Ms. Daniels-Carrero's behavior and professionalism. (Theissen Dep. at Ex. 18, at 20-21.)

58.     Ms. Theissen requested that Ms. Howell provide specific examples of her concerns. In response, Ms. Howell reported that Ms. Daniels-Carrero would take more than 30-minute lunch breaks and up to an hour on average, that she had no sense of urgency in her work and could not adjust to the flow of the room, that she refused lunches at times or took them on her own time even when asked to wait for relief, and that she did not contribute to a positive culture as the team did not want to address her due to her attitude and not welcoming body language. With respect to her interactions with the team, Ms. Howell shared that Ms. Daniels-Carrero's tone and short answers were perceived as dismissive. She also shared that the team was hesitant to address her too-lengthy lunch breaks out of fear of what she would say back to them. (Ex. 18 at 34-35; *see also* Emails from Ms. Howell, attached as Ex. 19.)

59.     On September 17, 2024, Ms. Howell dismissed Ms. Daniels-Carrero from her assignment nearly two months prior to its end date. (Ex. 2 at 141, 143; Ex. 18 at 33-34.)

60.     When dismissing her, Ms. Howell also told Ms. Daniels-Carrero that she had received complaints from her staff about their not being able to approach Ms. Daniels-Carrero or talk to her. (Ex. 2 at 143-144.)

61.     Ms. Daniels-Carrero reports that Ms. Howell said she would be on administrative leave and that Ms. Howell said, "Maybe you'll be paid." (Ex. 2 at 145.)

10

62.     Ms. Theissen worked with Ms. Farrah in HR to investigate the complaints. In doing so, they discovered that many of the clinical directors at the other hospitals at which Ms. Daniels-Carrero had worked had similar concerns with Ms. Daniels-Carrero's performance or behavior. (Ex. 1 at ¶ 20-21; *see also* Prior Complaints, attached as Ex. 20.)

63.     Because previously Ms. Daniels-Carrero had only received a verbal warning, Ms. Farrah and Ms. Theissen ultimately moved forward with preparing and issuing Ms. Daniels-Carrero a Final Written Warning rather than pursuing termination. (Ex. 1 at ¶¶ 21-22.)

64.     In preparing the Final Written Warning in collaboration with HR, Ms. Theissen recited the stated reasons that Inova Loudoun Hospital did not want Ms. Daniels-Carrero to continue her assignment. (Ex. 18 at 34; Ex. 1 at ¶ 24; Final Written Warning, attached as Ex. 21.)

65.     In discussing with Ms. Howell any reasons that Inova Loudoun Hospital OR did not want Ms. Daniels-Carrero to return, Ms. Howell's reasons were not related in any way to Ms. Daniels-Carrero's need for eight-hour shifts. Inova Loudoun Hospital OR had been able to accommodate Ms. Daniels-Carrero's need for eight-hour shifts. (Ex 18 at 35; Ex. 1 at ¶ 22.)

66.     As reflected in the Final Written Warning, during the investigation, Ms. Theissen and Ms. Farrah also had learned that hospitals other than Inova Loudoun Hospital also did not want ISS to assign Ms. Daniels-Carrero to their ORs again due to concerns with Ms. Daniels-Carrero's behavior and professionalism. These included Inova Fair Oaks Hospital OR, Inova Fairfax Hospital PSB OR, and Inova Alexandria Hospital. (Ex. 18 at 35-37; Ex. 1 at ¶ 22; Email from Inova Fair Oaks Hospital and Email re: Inova Fairfax PSB OR, attached as Ex. 22.)

67.     In deciding to issue the Final Written Warning to Ms. Daniels-Carrero, Ms. Theissen and Ms. Farrah did not consider her requests for accommodation or her disability.

68.     None of the ORs that did not want Ms. Daniels-Carrero to return attributed their decision to her disability or to her need to work only 8-hour shifts. (Ex. 18 at 36; Ex. 1 at ¶ 23.)

11

69.     As set forth in the Final Written Warning, the request by these ORs impacted Ms. Daniels-Carrero's ability to perform the functions of her job as a float pool nurse in ISS. Thus, ISS would need to place Ms. Daniels-Carrero on unpaid administrative leave until it could locate an OR at a hospital willing and able to accept her for an assignment. The ability to find an assignment was to be evaluated in the next 30 days. (Ex. 1 at ¶ 23-24; Ex. 21.)

70.     At that time, Inova Fairfax Hospital Women's OR did not have a need for an ISS float nurse. (Ex. 18 at 37-38; *see also* 10/22/24 Email, attached as Ex. 23.)

71.     The only unit with a vacancy that would accept Ms. Daniels-Carrero was Inova Fairfax Hospital Tower OR. As such, on October 22, 2024, ISS assigned Ms. Daniels-Carrero to that unit effective the next day through February 1, 2025. (Ex. 18 at 38; Ex. 1 at ¶ 27; Ex. 23.)

72.     Prior to determining that Inova Fairfax Hospital Tower OR could accept Ms. Daniels-Carrero for an assignment, and although Ms. Howell only advised Ms. Daniels-Carrero that "maybe" her administrative leave would be paid (Ex. 2 at 145), Ms. Daniels-Carrero represented to Jeffrey Pratt, Vice President of Human Resources Operations, that Ms. Howell had told her that her administrative leave would be paid. (Ex. 2 at 165; Ex. 1 at ¶ 26.)

73.     Upon learning of Ms. Daniels-Carrero's representation that Ms. Howell had advised that her administrative leave would be paid, HR took steps to ensure that Ms. Daniels-Carrero would receive her pay for the period of administrative leave from September 17, 2024, when Ms. Howell dismissed her from her assignment, to September 30, 2024, when the Final Written Warning advised her that further administrative leave would be unpaid until another assignment could be located. (Ex. 1 at ¶ 26; *see also* Ex. 2 at 183-184; Ex. 21.)

**Inova Continues to Accommodate Ms. Daniels-Carrero until Her Resignation**

74.     On October 23, 2024, Ms. Theissen advised Ms. Daniels-Carrero of her assignment to Inova Fairfax Hospital Tower OR effective that day. (Ex. 2 at 182-183.)

12

75.    Inova Fairfax Hospital Tower OR was able to accommodate Ms. Daniels-Carrero's approved accommodation of 8-hour shifts during this assignment. (Ex. 18 at 39, 44; *see also* Ex. 2 at 187.)

76.    On December 20, 2024, Ms. Theissen and Ms. Farrah met virtually to touch base on several matters. During this meeting, and as reflected in the agenda for the meeting, they discussed that Inova Fairfax Hospital Tower OR had reported that they could see that Ms. Daniels-Carrero had made changes and they had not had any issues with her. (Ex. 1 at ¶¶ 28; *see also* Virtual Meeting Agenda, attached as Ex. 24.)

77.    On January 14, 2025, Ms. Theissen sent an email, advising Ms. Daniels-Carrero that Inova Fairfax Hospital Tower OR had extended her assignment from February 1, 2025, thorough April 25, 2025. (Ex. 18 at 39-40; *see also* January 14, 2025 Email, attached as Ex. 25.)

78.    Ms. Daniels-Carrero did not always check her Inova email and did not see the January 14, 2025 email advising her of the contract extension. (Ex. 2 at 185-187.)

79.    Because the required schedule for nurses on Inova Fairfax Hospital Tower OR was two 8-hour shifts and two 12-hour shifts per week, the charge nurses on the unit placed color-coded magnets bearing each nurses' name on a board to designate which nurses on a given shift were working 8-hour shifts and which nurses were working 12-hour shifts. (Ex. 2 at 35, 120.) During her last assignment, although Inova Fairfax Hospital Tower OR scheduled Ms. Daniels-Carrero only for 8-hour shifts in Inova's scheduling system, Ms. Daniels-Carrero sometimes would arrive to work and see that a charge nurse had assigned her the wrong color magnet (e.g., the color for 12-hour shifts instead of 8-hour shifts as actually scheduled). (Ex. 2 at 120.) When this occurred, Ms. Daniels-Carrero would advise the charge nurses that she could not work twelve hours because of her doctor's orders, and the charge nurse would call someone to change the magnet to the correct color. (Ex. 2 at 227, 230-231.)

13

80. Ms. Daniels-Carrero never complained to HR or ISS about the charge nurses selecting the wrong magnet to designate her shift appropriately. (Ex. 2 at 231-233; Ex. 1 at ¶ 30.)

81. Even if a charge nurse assigned Ms. Daniels-Carrero a magnet that corresponded with 12-hour shifts instead of 8-hour shifts, Ms. Daniels-Carrero did not actually work any 12-hour shifts in 2024 or 2025. (Ex. 2 at 214-215.) As reflected in a report of when Ms. Daniels-Carrero clocked in and out for each shift throughout 2024, after she began requesting accommodations in December 2023, Ms. Daniels-Carrero only worked 8-hour shifts, not 12-hour shifts. (Ex. 1 at ¶ 29; Ex. 2 at 133-134; Time Sheets, attached as Ex. 26.)

82. During her final assignment at Inova Fairfax Tower OR, which ultimately ended January 31, 2025, Ms. Daniels-Carrero only worked 8-hour shifts. (Ex. 2 at 187.)

83. At this time, Ms. Daniels-Carrero was hoping to transition from ISS to work at Inova Fairfax Hospital Tower OR on a permanent basis. She shared with a coworker her belief that she would be a great fit on the unit and just wanted to stay there. (Ex. 2 at 189, 192, 194.)

84. On January 16, 2025, Ms. Daniels-Carrero received and accepted a job offer for which she had applied to work as a nurse at Mary Washington Hospital, working through an agency, with a start date of February 11, 2025. (Ex. 2 at 187-188; Accepted Job Offer at Ex. 27.)

85. On January 31, 2025, Ms. Daniels-Carrero gave less than twelve hours' notice that she was resigning from her position, effective 7:00 am the following morning, which resignation Inova accepted that date because Ms. Daniels-Carrero had been scheduled to be on call beyond 7:00 am the next day. (Ex. 2 at 199-200; Resignation Email, attached as Ex. 28.)

## Argument

The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

14

conditions, and privileges of employment. 42 U.S.C. § 12112(a). Discrimination under the ADA also includes refusing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5).

In this case, Ms. Daniels-Carrero has asserted two counts of discrimination under the ADA against Inova. First, she claims that Inova failed to reasonably accommodate her disability during her employment. (Compl. Count II). Second, she claims that Inova discriminated against her by issuing discipline to her and constructively discharging her employment because of her disability or perceived disability. (Compl. Count I.) For the reasons set forth fully below, Inova is entitled to summary judgment as to both counts of Ms. Daniels-Carrero's Complaint.

## I.      Inova Granted Reasonable Accommodations to Ms. Daniels-Carrero (Count II).

In Count II, Ms. Daniels-Carrero claims that Inova denied her request for the reasonable accommodation of limiting herself to working eight-hour shifts. (Compl. ¶¶ 17-18, 59.) To prevail on this claim, Ms. Daniels-Carrero must show (i) she was disabled, (ii) the employer had notice of her disability, (iii) she could perform the essential functions of her position with a reasonable accommodation, and (iv) the employer refused to make such accommodation. *Tataro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 165 (4th Cir. 2024).

For purposes of this Motion, Inova does not dispute that Ms. Daniels-Carrero was disabled or that it had notice of her disability as of December 18, 2023. (SUMF 22-23.) But, as set forth below, Ms. Daniels-Carrero cannot satisfy the third or fourth elements of her claim.

### A.  An Essential Function of Ms. Daniels-Carrero's Position as an ISS Nurse Was to Flexibly Meet and Adapt to the Needs of Each Unit to Which She Was Assigned.

The third element of a failure-to-accommodate claim "requires a showing that the plaintiff can perform the essential functions of the position with a reasonable accommodation." *Tataro-McGowan*, 91 F.4th at 165. "If the plaintiff cannot perform the essential functions of the

job, with or without a reasonable accommodation, then she is not a 'qualified individual' under the ADA and therefore has no legal entitlement to an accommodation." *Id.*

Under the ADA, essential functions are those "that bear more than a marginal relationship to the job at issue." *Cook v. United Parcel Sery., Inc.*, 2022 WL 1090251, 2022 U.S. App. LEXIS 9865, at *3 (4th Cir. Apr. 12, 2022). A job function may be considered essential for several reasons, including, but not limited to, "the reason the position exists is to perform that function," or "because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2)(i), (ii).

It is the employee's burden to show that her requested accommodation would allow her to perform the essential functions of the position. *Hannah v. UPS*, 72 F.4th 630, 636 (4th Cir. 2023). "[T]o satisfy that burden, [an employee] is not free simply to redefine the job." *Id*. Rather, the "ADA directs that consideration be given 'to *the employer's judgment* as to what functions of a job are essential.'" *Id*. (quoting 42 U.S.C. § 12111(8)) (emphasis in original). The ADA's regulatory guidance further explains that:

> . . . the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards, whether qualitative or quantitative, nor to require employers to lower such standards . . . If an employer requires its typists to be able to accurately type 75 words per minute, it will not be called upon to explain why an inaccurate work product, or a typing speed of 65 words per minute, would not be adequate. Similarly, if a hotel requires its service workers to thoroughly clean 16 rooms per day, it will not have to explain why it requires thorough cleaning, or why it chose a 16 room rather than a 10 room requirement.

29 C.F.R. pt. 1630, app. § 1630.2(n).  Put simply, an employer is not required to change the essential functions of the position to accommodate an employee. *Lewis v. Gibson*, 621 Fed. Appx. 163, 164-65 (4th Cir. 2015).

In this case, the record reflects that, in Inova's judgment, an essential function of Ms. Daniels-Carrero's job as an ISS nurse required her to go to all Inova facilities, without exception,

16

to meet the unit's needs due to its shortage of nurses. (SUMF 3-5.) Inova listed this duty and responsibility first in Ms. Daniels-Carrero's job description and stressed this requirement in a welcome letter provided prior to her commencing employment. (SUMF 3-5; Exs. 4-5.) As set forth in Ms. Daniels-Carrero's welcome letter, "If an ISS nurse is unable or unwilling to be contracted to a specific facility for any reason: clinical issues, performance concerns, or behavior; a search for a position outside of ISS will be in order." (SUMF 4; Ex. 4 at Inova 2847.)

Indeed, this requirement was so critical that Inova paid its ISS nurses a higher hourly rate than it pays nurses assigned only to one unit for this type of flexibility. (SUMF 6.) Furthermore, the Nurse Manager for ISS when Ms. Daniels-Carrero commenced her employment as an ISS nurse has testified that she considered the requirement to work at all facilities to be an essential function of the job as an ISS nurse. (SUMF 7; Ex. 29 at 40-41.)

One of the units to which Ms. Daniels-Carrero could be (and was) assigned was the Inova Fairfax Hospital Tower OR, which unit required nurses to work two 12-hour shifts and two 8-hour shifts per week. (SUMF 11; Ex. 2 at 35.) Prior to any symptoms of multiple sclerosis, Ms. Daniels-Carrero worked those required hours. (SUMF 11.) After she began experiencing symptoms in early July 2023 and then subsequently after receiving her diagnosis of multiple sclerosis in the month or so following her hospitalization in late July 2023, Ms. Daniels-Carrero no longer could flexibly meet the requirements of that unit as she could work only 8-hour shifts, but not the two 12-hour shifts it required. (SUMF 11-14.) Additionally, at least one other unit, Inova Fair Oaks Hospital OR, reported a need only for ISS nurses to work 10-hour and 12-hour shifts in 2024, which Ms. Daniels-Carrero could not do. (SUMF 32; *see* Ex. 10 at Inova 681.)

Accordingly, as the record reflects that Ms. Daniels-Carrero no longer could perform the essential function of her job as an ISS nurse that she "must be able to go to ***all facilities*** without exception" or "float to ***any*** Perioperative site of care" (Ex. 4 at Inova 2847 (emphasis added); *see*

17

*also* Ex. 5; Ex. 29 at 40), Ms. Daniels-Carrero was not a "qualified individual with a disability," nor can she satisfy the third element of her failure-to-accommodate claim.

**B. Notwithstanding Her Inability to Perform All Essential Functions of Her Job, Inova Nevertheless *Granted* Ms. Daniels-Carrero's Requested Accommodation.**

Even if Ms. Daniels-Carrero could satisfy the third element of her claim (by showing that an ability to float to all units and to work any shift a unit required) was not an essential function of her job, though it was, Ms. Daniels-Carrero's claim still fails as to the fourth element.

To establish the fourth element of a failure-to-accommodate claim under the ADA, a plaintiff must show that she requested a reasonable accommodation and that the "employer refused to make such accommodation." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378–79 (4th Cir. 2022). Where the record demonstrates that the employer in fact provided the accommodation requested, the plaintiff cannot establish the refusal element, and summary judgment is appropriate. *Id*. at 378; *Jenkins v. Univ. of Md. Cap. Region Health*, 2025 U.S. Dist. LEXIS 58034, at *47–50 (D. Md. Jan. 27 2025) (granting summary judgment where record showed the employer granted the requested accommodations); *see also Mussat-Whitlow v. Winston-Salem State Univ.*, 2026 U.S. Dist. LEXIS 48652, at *10–11 (W.D.N.C. March 10, 2026) (dismissing claim where plaintiff's conclusory allegations of denial were contradicted by allegations showing the employer granted the requested accommodations).

Here, the record reflects that Ms. Daniels-Carrero requested intermittent family medical leave, 8-hour shifts, and, later, closer parking garage access during one subsequent assignment. (SUMF 22, 25-28, 40, 45-47.) Inova granted each of Ms. Daniels-Carrero's requests.

First, Inova approved Ms. Daniels-Carrero for intermittent leave. (22; Ex. 1 at ¶ 8.) Second, even while Ms. Daniels-Carrero repeatedly failed to meet with Inova regarding her requested accommodations in early 2024 (when her physician's supporting letter had not recommended 8-hour shifts), Inova Alexandria Hospital OR and Inova Fairfax Hospital PSB

18

Surgery Center both accommodated Ms. Daniels-Carrero with 8-hour shifts. (SUMF 28-29, 33-39.) Third, while at Inova Fairfax Hospital PSB, Inova also accommodated Ms. Daniels-Carrero's request to park in a closer parking garage. (SUMF 41-42.)

Finally, when Ms. Daniels-Carrero submitted updated medical paperwork to support her request to work only 8-hour shifts on April 29, 2024, Inova Fairfax Hospital Tower OR also accommodated her request to work only 8-hour shifts, rather than the two 12-hour shifts per week otherwise required of its nurses. (SUMF 46, 50.) Thereafter, Inova Loudoun Hospital and Inova Fairfax Hospital Tower OR continued to accommodate Ms. Daniels-Carrero with 8-hour shifts for the remainder of her employment. (SUMF 51, 53, 75, 82.) And if a charge nurse forgot her schedule or assigned her the wrong color of magnet, Inova corrected the issue as soon as Ms. Daniels-Carrero reminded the unit of her schedule. (SUMF 81-82.) Thus, once Ms. Daniels-Carrero requested the accommodation of an 8-hour shift in late December 2023, and even prior to submitting sufficient supporting medical documentation, Ms. Daniels never worked anything but an 8-hour shift. (SUMF 27, 39, 51, 53, 81-82; *see also* Ex. 1 at ¶ 29; Ex. 26.)

In sum, and even though Ms. Daniels-Carrero no longer was qualified for her position as an ISS nurse as she could not flexibly meet the needs of all hospitals, the undisputed record reflects that no unit to which she was assigned refused to grant Ms. Daniels-Carrero a reasonable accommodation of 8-hour shifts or otherwise required her to work more than an 8-hour shift after she made her request. As a result, Ms. Daniels-Carrero cannot satisfy all of the requisite elements of her failure to accommodate claim, and Inova is entitled to summary judgment as to Count II.

## II.     Inova Did Not Discriminate against Ms. Daniels-Carrero by Issuing Discipline, Nor Did It Constructively Terminate Her Employment (Count I).

In Count I of her Complaint, Ms. Daniels-Carrero claims that Inova discriminated against her in violation of the ADA by disciplining her and constructively discharging her employment

19

based upon her disability or a perceived disability. (Compl. ¶¶ 49-51.) For the reasons set forth below, Inova is entitled to summary judgment in its favor as to both portions of this claim.

**A. Inova Did Not Discriminate against Ms. Daniels-Carrero by Issuing Discipline to Her During Her Employment.**

Absent direct or indirect evidence that Inova disciplined Ms. Daniels-Carrero or took any other adverse actions against her because of her disability or perceived disability (and Inova is aware of no such evidence in the record), Ms. Daniels-Carrero must prove that any discipline or other adverse action she received violated the ADA under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Laird v. Fairfax Cty.*, 978 F.3d 887, 892 (4th Cir. 2020) (citing *Jacobs v. N.C. Admin. Off. Of the Cts.*, 780 F.3d 562, 572, 577 (4th Cir. 2015) (applying framework to a claim under the ADA)).

Under the first step in the *McDonnell Douglas* framework, Ms. Daniels-Carrero must prove a prima facie case of discrimination. *McDonnell*, 411 U.S. at 802. Only if she satisfies her initial burden does the burden of production shift to Inova to establish a non-discriminatory reason for its actions against her. *Id.* Upon producing such evidence, the burden shifts back to Ms. Daniels-Carrero to prove that the reasons for any discipline she received were a pretext for discrimination. *Id.* at 804. "Importantly, although the intermediate burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact of the intentional discrimination remains at all times with [Ms. Daniels-Carrero]." *Crews-Sanchez v. Frito-Lay, Inc.*, 2024 U.S. App. LEXIS 2838, *4 (4th Cir. Feb. 7, 2024) (quoting *Hoyle v. Freighliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011) (cleaned up)). As set forth below, Ms. Daniels-Carrero cannot satisfy her burdens of production or her ultimate burden of persuasion on this record.

**1. Ms. Daniels-Carrero Cannot Prove a Prima Facie Case of Discrimination.**

A claim of disability discrimination under the ADA requires Ms. Daniels-Carrero to show (i) she is a qualified individual with a disability, (ii) she was subjected to an adverse

employment action, (iii) at the time of the adverse action, she was performing the job at a level that met her employer's legitimate expectations, and (iv) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See Pope v. Western Tidewater Cmty. Servs. Bd*, 2022 U.S. Dist. LEXIS 140951, *33-34 (E.D. Va. Aug. 8, 2022) (citing *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001)).

As an initial matter, and as to the second element of her prima facie claim, Ms. Daniels-Carrero must have suffered an adverse employment action of some kind. *Adams v. Anne Arundel Cnty. Pub. Sch*, 789 F.3d 422, 431 (4th Cir. 2015). "The requirement of an adverse employment action seeks to differentiate those harms that work a 'significant' detriment on employees from those that are relatively insubstantial or 'trivial.'" *Id.* As "reprimands and poor performance evaluations occur with some frequency in the workplace . . . they are much less likely to involve adverse employment actions than the transfers, discharges, and failures to promote whose impact on the terms and conditions of employment is immediate and apparent." *Id.* (citing *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) (an oral or written reprimand, without some actual injury, does not qualify)).

In this case, the only disciplinary action in the record that may plausibly rise to the level of an adverse employment action occurred in September 2024, when Ms. Howell dismissed Ms. Daniels-Carrero from her assignment to Inova Loudoun Hospital OR, which dismissal ultimately resulted in the issuance of a Final Written Warning to Ms. Daniels-Carrero and three weeks of unpaid administrative leave between the issuance of that warning and the date on which ISS found a replacement assignment for her.[2] (SUMF 59, 61, 63; Ex. 21.) Even assuming that a Final

---

[2] In January 2024, Inova had issued Ms. Daniels-Carrero a Verbal Warning to coach her on the perception of her peers that she used a loud and abrasive tone and that peers felt unable to give her feedback. (SUMF 56; Ex. 17.) The record does not reflect that Ms. Daniels-Carrero suffered any actual injury as a result of the issuance of this Verbal Warning.

Written Warning and approximately three weeks of associated unpaid administrative leave satisfies the second element of a prima facie case,[3] Ms. Daniels-Carrero still cannot establish any of the other elements of her claim.

First, for the reasons discussed in Section I(A) above, Ms. Daniels-Carrero cannot satisfy the first element of her prima facie case because she was not a qualified individual with a disability due to her inability to perform the essential function of her job of floating to all Inova hospitals and sites of cares and flexibly meeting any of their scheduling needs.

Likewise, Ms. Daniels-Carrero cannot satisfy the third element of her prima facie case because she has no record evidence that she was performing her job as an ISS nurse at a level that met her employer's expectations at the time of any adverse action. Indeed, the fact that four hospital ORs would not accept Ms. Daniels-Carrero back to their units because of her behavior and lack of professionalism (*see* SUMF 66; Exs. 21, 22) demonstrates that Ms. Daniels-Carrero was not meeting Inova's legitimate and documented expectations for its ISS nurses. As set forth in Ms. Daniels-Carrero's welcome letter, "If an ISS nurse is unable or unwilling to be contracted to a specific facility for any reason: clinical issues, performance concerns, ***or behavior***, a search for a position outside of ISS will be in order." (Ex. 4 at Inova 2847 (emphasis added).) At the time that Inova issued Ms. Daniels-Carrero a Final Written Warning and placed her on unpaid administrative leave pending efforts to find a unit that would accept her back, Ms. Daniels-Carrero's inability to float to Inova Loudoun Hospital OR, Inova Alexandria Hospital OR, Inova

---

[3] This Court previously has observed, "Courts have recognized that temporary adjustments in response to unexpected situations do not constitute adverse employment actions." (*Pratt v. Sci. Applcn's. Int'l Corp.*, No. 1:23-cv-417 (RDA/LRV), 2024 U.S. Dist. LEXIS 165013, at *24 (E.D. Va. Sept. 11, 2024) (finding that temporary unpaid leave of a matter of weeks does not constitute an adverse employment action for purposes of a disability discrimination claim). As discussed herein, Ms. Daniels-Carrero's unpaid administrative leave spanned only three weeks and, from ISS's point of view, arose unexpectedly after Inova Loudoun Hospital dismissed her from her assignment nearly two months earlier than expected. (SUMF 59, 69-73.)

Fair Oaks Hospital OR, and Inova Fairfax Hospital PSB demonstrates that Ms. Daniels-Carrero was not meeting Inova's legitimate expectations for ISS nurses at that time.

Finally, Ms. Daniels-Carrero also has no record evidence to satisfy the fourth element of showing that the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination based on her disability or any perceived disability. At the time of her dismissal from her assignment in September 2024, Inova had been accommodating Ms. Daniels-Carrero with her requested 8-hour shifts at multiple hospitals since she requested accommodations in late December 2023, and even as early as the prior July of 2023. (SUMF 12-14, 27, 39, 51, 53.) And as to Inova Loudoun Hospital in particular, it had advised Ms. Daniels-Carrero on July 15, 2024—several months prior to her dismissal from her assignment—that she would be working five 8-hour shifts. (SUMF 52-53.) Furthermore, when dismissing her and when advising her ISS manager of the reasons for dismissing her, Ms. Howell did not mention Ms. Daniels-Carrero's disability or her need to work only 8-hour shifts. (SUMF 60, 65.)

Likewise, when placing Ms. Daniels-Carrero on unpaid administrative leave after issuing the Final Written Warning and while searching to find a replacement assignment for her, none of the other hospital units that would not accept her back mentioned Ms. Daniels-Carrero's disability or her need to work only 8-hour shifts. (SUMF 68.) On this record, Ms. Daniels-Carrero simply cannot satisfy her burden of showing circumstances that give rise to any reasonable inference of discrimination because of her disability. Having not met her burden of proving even a prima facie case, Inova is entitled to summary judgment as to Count I.

**2. Inova Had Legitimate, Non-Discriminatory Reasons for Issuing Discipline to Ms. Daniels-Carrero and Placing Her on Unpaid Administrative Leave.**

Even if Ms. Daniels-Carrero could satisfy a prima facie case of discrimination under the ADA, Inova had legitimate, non-discriminatory reasons for dismissing her from her assignment

at Inova Loudoun Hospital, for issuing her a Final Written Warning, and for placing her on unpaid administrative leave for three weeks while seeking a replacement assignment for her.

First, with respect to the dismissal from her assignment at Inova Loudoun Hospital, and as Ms. Howell informed Ms. Daniels-Carrero at the time and documented in writing to her ISS manager, Ms. Howell made the decision to dismiss Ms. Daniels-Carrero due to concerns with her behavior and professionalism. (SUMF 57-60.) Specifically, Ms. Howell reported that Ms. Daniels-Carrero was taking more than her allotted 30-minute lunch break by leaving for up to an hour on average, she had no sense of urgency in her work, and she refused lunches at times in order to take them on her own time even when asked to wait for relief. (SUMF 58; Ex. 19.) Ms. Howell further reported that Ms. Daniels-Carrero's colleagues did not want to address issues with her, including the issues with her lunch breaks, due to her attitude and unwelcoming body language. (*Id.*) Ms. Howell further shared that Ms. Daniels-Carrero's tone and short answers were perceived as dismissive, and that her colleagues feared what she would say to them if they attempted to give her feedback. (*Id.*) Ms. Howell likewise explained to Ms. Daniels-Carrero directly that she had dismissed her from the assignment after receiving complaints from staff about not being able to approach Ms. Daniels-Carrero or talk to her. (SUMF 60.)

Upon learning of Ms. Howell's decision, Ms. Theissen (Ms. Daniels-Carrero's then-ISS Supervisor) and Ms. Farrah in HR investigated the concerns and discovered that clinical directors and leaders at other hospitals to which Ms. Daniels-Carrero had been assigned likewise had experienced concerns with Ms. Daniels-Carrero's behavior and professionalism. (SUMF 56, 62, 66; Exs. 17, 20.) Because Ms. Howell's complaints were corroborated by the similar concerns of other leaders, but because Ms. Daniels-Carrero had only previously received a verbal warning for such concerns, Ms. Theissen and Ms. Farrah proceeded with a Final Written Warning rather than a termination of her employment. (SUMF 56, 63; *see also* Exs. 17, 21.)

24

Finally, because Ms. Farrah and Ms. Theissen had determined that Ms. Howell's complaints were founded and had issued a Final Written Warning based on her non-discriminatory concerns, they advised Ms. Daniels-Carrero that she would be on unpaid administrative leave until they could find a replacement assignment for her. This decision was based on the substantiation of concerns with Ms. Daniels-Carrero's behavior, which rendered a search for an alternative assignment difficult given that at least four Inova hospital ORs would not accept Ms. Daniels-Carrero back to their units due to their own concerns with her behavior and professionalism. (SUMF 66, 69.)

As set forth above, Inova had non-discriminatory reasons for dismissing Ms. Daniels-Carrero from an assignment due to her behavior, which reasons further were corroborated by similar concerns of other leaders at other hospitals. As a result, Inova also had non-discriminatory reasons to issue a Final Written Warning to Ms. Daniels-Carrero, who no longer could meet the requirements of her position as an ISS nurse due to her behavior. Likewise, Inova had non-discriminatory reasons to place Ms. Daniels-Carrero on unpaid administrative leave while it sought an alternative assignment for her, which assignment it only needed to find for her because she had been dismissed nearly two months early from Inova Loudoun Hospital as a result of her unacceptable behavior. As none of these reasons relate to Ms. Daniels-Carrero's disability, or to her requests for accommodation of a disability, and as Ms. Theissen and Ms. Farrah did not consider Ms. Daniels-Carrero's disability in taking these actions (SUMF 67), Inova has more than satisfied its burden of production under the *McDonnell Douglas* framework.

**3. Ms. Daniels-Carrero Cannot Satisfy Her Burden of Proving that Inova's Stated Reasons Were a Pretext for Discrimination Based on a Disability.**

Because Inova has satisfied its burden of production under the *McDonnell Douglas* framework by articulating a legitimate, non-discriminatory reason for its actions, Ms. Daniels-Carrero "can only survive summary judgment if she forecasts sufficient evidence that would

25

allow a jury to reasonably infer that [Inova's] stated justification was pretextual." *Tartaro-McGowan*, 91 F.4th at 173.

At this stage, Ms. Daniels-Carrero may "produce evidence that [Inova's] justification is 'unworthy of credence' or that there is other circumstantial evidence sufficiently probative of discrimination." *Pratt*, 2025 U.S. Dist. LEXIS 188994, *18 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). The "core" of Ms. Daniels-Carrero's ADA discrimination claim, however, remains the same: Ms. Daniels-Carrero must prove that her disability, or any perceived disability, was the "but-for" cause of any adverse action she suffered. *Pratt*, 2025 U.S. Dist. LEXIS 188994, *18 (quoting *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F. 4th 244, 255 (4th Cir. 2025) (instructing that "the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of discrimination")); *see also Pope*, 2022 U.S. Dist. LEXIS 140951 at *34 (citing *Gentry v. E. W. Partners Club Mgmt. Co., Inc.*, 816 F.3d 228, 235 (4th Cir. 2016) (holding that the text of the ADA calls for a "but-for" causation standard in analyzing an ADA discrimination claim)).

Here, there is no evidence in the record from which a jury could find that Ms. Daniels-Carrero's disability, or any perceived disability, was the "but-for" cause of (1) Ms. Howell's dismissal of Ms. Daniels-Carrero from one assignment at Inova Loudoun Hospital OR nearly two months early, (2) Ms. Theissen and Ms. Farrah's issuance of a Final Written Warning, or (3) Inova's resulting placement of Ms. Daniels-Carrero on unpaid administrative leave for approximately three weeks while ISS sought a replacement assignment for her. There simply is nothing in the record from which any jury reasonably could conclude that the documented and non-discriminatory concerns raised not only by Ms. Howell, but also by *multiple* other leaders at *multiple* different hospitals, were all pretexts for discrimination based on Ms. Daniels-Carrero's disability, which the leaders had been accommodating upon her requests. For these reasons, Ms.

Daniels-Carrero lacks evidence sufficient to render plausible any finding by a reasonable jury of pretext, and Inova is entitled to summary judgment in its favor as to any such claim in Count I.

### B. Inova Did Not Constructively Discharge Ms. Daniels-Carrero.

As part of Count I, Ms. Daniels-Carrero also claims that Inova constructively discharged her when she gave notice of her resignation from her employment with Inova on January 31, 2025. (SUMF 85; Ex. 28.) To prove a claim of constructive discharge, Ms. Daniels-Carrero must demonstrate that her working conditions at the time of discharge were objectively intolerable. *Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 235 (4th Cir. 2022).[4]

"Intolerability of working conditions . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985); *see also Kelly v. Town of Abingdon*, 90 F.4th 158, 169 n.7 (4th Cir. 2024) ("An employee is 'constructively discharged' if he resigns after his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)). The Fourth Circuit has made clear that "mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004)). In other words, the standard for proving a constructive discharge is a "high standard," *Ofoche v. Apogee Med. Grp.*, 815 Fed. App'x 690, 692 (4th Cir. 2020), and one Ms. Daniels-Carrero cannot meet.

---

[4] Constructive discharge claims previously required proof of deliberate intent to force an employee to resign. The Supreme Court eliminated this element in 2016. *See United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) (citing *Green v. Brennan*, 578 U.S. 547 (2016)). *See also Kelly v. Town of Abingdon*, 90 F.4th 158, 169 n.7 (4th Cir. 2024) (discussing ADA claim and referring to *Green* standard for constructive discharge).

27

During her final assignment at Inova Fairfax Tower OR from October 23, 2024, through the notice of her resignation on January 31, 2025, Inova accommodated Ms. Daniels-Carrero's disability by permitting her to work only 8-hour shifts, though that unit otherwise required nurses to work two 12-hour shifts per week. (SUMF 11, 75, 82.) Nonetheless, according to Ms. Daniels-Carrero, the working conditions were "intolerable" because she had to remind the charge nurses that she could not work 12-hour shifts. (Ex. 2 at 217; SUMF 79.) Yet, notwithstanding that she had to remind charge nurses of her approved schedule, Ms. Daniels-Carrero has conceded that when she did remind them, the issue would be corrected, and she was never required to work more than an 8-hour shift during that assignment. (SUMF 80, 82.) While needing to remind charge nurses of her schedule may have been unpleasant for Ms. Daniels-Carrero, this simply does not rise to the level of conditions so intolerable that they would compel any reasonable person to resign, particularly given that her reminders proved entirely successful. (*Id.*)

Moreover, "[u]nless an employer is given sufficient time to remedy the situation, a constructive discharge generally will not be found to have occurred." *Pratt*, at *24  (quoting *Luna v. Walgreen Co.*, 347 F. App'x 469, 473 (11th Cir. 2009)); *see, e.g.*, *Kilgore v. Thompson & Brock Mgmt.*, 93 F.3d 752, 754 (11th Cir. 1996) ("A constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation. None of the plaintiffs returned to work after complaining to the company's corporate management. Summary judgment on the constructive discharge claim was appropriate; the plaintiffs did not allow sufficient time for Thompson and Brock to correct the situation.").

Thus, to the extent that Ms. Daniels-Carrero was dissatisfied with any particular working condition at Inova Fairfax Hospital Tower OR—namely, the need to remind charge nurses of her schedule if they assigned her the wrong color magnet—Ms. Daniels-Carrero never brought these circumstances to the attention of her managers or HR prior to resigning. (SUMF 81.)

Accordingly, not only do mistakes with the magnets (with no practical effect on Ms. Daniels-Carrero's shifts or actual hours worked) fail to constitute an objectively intolerable working condition, but Ms. Daniels-Carrero's failure to give Inova a chance to remedy the situation precludes her ability to prove any constructive discharge claim.

In addition, Ms. Daniels-Carrero's own conduct further underscores that her working conditions at the time of her resignation were not objectively intolerable. Indeed, at the time of her resignation and while assigned to Inova Fairfax Hospital Tower OR, Ms. Daniels-Carrero was hoping to continue to work at Inova Fairfax Hospital Tower OR on a permanent basis, and she informed a co-worker that she was a great fit on that unit and just wanted to stay there. (SUMF 83.) Ms. Daniels-Carrero's desire to continue working at Inova, including on the very unit to which she was assigned at the time of her resignation, defeats any claim of a constructive discharge. *See, e.g.*, *Evan v. Int'l Paper Co.*, 936 F.3d 183, 194 (4th Cir. 2019) ("The conditions, while no doubt frustrating and unpleasant to Evans, cannot, from an objective perspective, be construed to leave her no choice but to resign. In fact, Evans says as much in her resignation letter. There, she said her time at IPC, despite challenges, had been 'on the whole, satisfying and productive.' She even called her tenure at IPC a 'great experience.'" (internal citations omitted)).

Finally, Ms. Daniels-Carrero's decision to continue working for Inova while seeking employment elsewhere likewise undercuts any constructive discharge claim. As this Court has observed, circumstances where an employee continued to work while obtaining a new offer of employment "are not sufficient to establish intolerable working conditions or a constructive discharge." *Pratt*, 2024 U.S. Dist. LEXIS 165013, at *24-25 (collecting cases). For these reasons, Ms. Daniels-Carrero cannot prove that Inova constructively discharged her employment for any reason—much less that it did so in violation of the ADA—and Inova is entitled to summary judgment in its favor as to Count I.

29

**Conclusion**

The undisputed record evidence demonstrates that Inova did not fail to accommodate Ms. Daniels-Carrero's disability, nor did it issue any discipline to her or take any other adverse action against her because of her disability or any perceived disability. Furthermore, the undisputed record evidence conclusively establishes that Ms. Daniels-Carrero cannot prove any claim of constructive discharge at all, including any such claim based on her disability or any perceived disability, given that she voluntarily left her employment for another position while simultaneously expressing that she wished she could stay. For all of the foregoing reasons, Inova respectfully requests that this Court grant its motion for summary judgment, enter judgment in its favor as to both counts of the Ms. Daniels-Carrero's Complaint, and award Inova such other and further relief as this Court deems appropriate.

Respectfully submitted,

INOVA HEALTH CARE SERVICES
By Counsel

Date: April 24, 2026

BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
Phone: 703-691-1235
Fax: 703-691-3913

By:        /s/ Laurie L. Kirkland
        Laurie L. Kirkland, VSB No. 75320
         lkirkland@bklawva.com
        Ian J. McElhaney, VSB No. 94888
         imcelhaney@bklawva.com
        Counsel for Defendant

30

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Filing ("NEF") to all counsel of record.

                                 /s/ Laurie L. Kirkland
                                 Laurie L. Kirkland, Esq.
                                 Virginia State Bar No. 75320
                                 BLANKINGSHIP & KEITH, P.C.
                                 4020 University Drive, Suite 300
                                 Fairfax, Virginia 22030
                                 Phone: 703-691-1235
                                 Fax: 703-691-3913
                                 lkirkland@bklawva.com
                                 Counsel for Defendant

31